UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
(Norfolk Division)

| | | |
|---|---|---|
| BUILDERS MUTUAL INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:10cv324 |
| | ) | |
| THE FUTURA GROUP LLC, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM IN
OPPOSITION TO MOTION TO STAY ALL PROCEEDINGS**

Plaintiff Builders Mutual Insurance Company ("BMIC" or "Plaintiff"), by counsel, files this Memorandum in Opposition to Defendants Benjamin R. Proto and Holly Proto's (the "Protos" or "Defendants") Motion to Stay All Proceedings ("Motion to Stay") and states as follows:

## I.    INTRODUCTION

In this declaratory judgment action, BMIC seeks a declaration that it owes no duty to defend, and therefore indemnify, its insured The Futura Group, L.L.C. ("Futura") in an action pending before the Circuit Court for the City of Virginia Beach ("Virginia Beach Circuit Court Action").  Throughout the pendency of the state court action, BMIC has provided Futura with a defense under a reservation of rights.

The state court action seeks damages allegedly attributable to off-gassing of toxic chemicals due to the use of "Chinese Drywall" in the Protos' home.  BMIC maintains there is no potential of coverage for such an action under the terms of its policy which, among other things, contains a "Total Pollution Exclusion" excluding from coverage "'bodily injury' or 'property

damage' which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time."

Having received an extension of time in which to respond to BMIC's Complaint, the Protos have now filed a Motion to Stay All Proceedings which, given the clear precedent within our Circuit establishing that the granting of such a stay would be an abuse of discretion, can only be viewed as a tactic for delay.

Applying the factors discussed in Nautilus Insurance Company v. Winchester Homes, Inc., 15 F.3d 371 (4th Cir. 1994), the Protos primarily argue that a stay is necessary to avoid unnecessary entanglement with the underlying Virginia Beach Circuit Court Action.  In doing so, the Protos misapprehend the nature of this declaratory judgment action, asserting, without a single reference to Virginia law, that "Builders Mutual must, by necessity, present and prove the same or substantially similar facts as are at issue in the Protos' Lawsuit pending in Virginia Beach Circuit Court."  Mem. at 5.  This statement is completely contrary to Virginia law on the duty to defend.  After the Fourth Circuit's decisions in Minnesota Lawyers Mutual Insurance Company v. Antonelli, Terry, Stout & Kraus, 355 Fed. Appx. 698 (4th Cir. 2009), and Penn-America Ins. Co. v. Coffey, 368 F.3d 409 (4th Cir. 2004), the law is abundantly clear: in determining whether there is a duty to defend, courts compare **the allegations in the underlying complaint, taken as true, with the language of the insurance policy.**  No factual determinations are "necessary, **or even possible",** Antonelli, 355 Fed. Appx. at 702.  In both Antonelli and Coffey, the Fourth Circuit **reversed, for abuse of discretion,** district court decisions dismissing actions seeking declarations regarding the duty to defend, holding that the district court erred in finding that a determination of facts was necessary in order to determine the duty to defend.  This case is no different than Antonelli and Coffey: it is simply a duty to

defend case that involves the comparison of the allegations in the Virginia Beach Circuit Court Action to the policies issued by BMIC to Futura, nothing more. Consequently, none of the Protos' arguments regarding the various factual issues in the underlying action are remotely relevant. In the Fourth Circuit, courts routinely make duty to defend determinations in advance of the adjudication of the facts in the underlying litigation, and this Court should do so here.

Moreover, none of the other <u>Nautilus</u> factors – state interests, judicial economy, and procedural fencing – justify a stay of this action. This straight-forward duty to defend case does not involve any novel or complex issues of state law that are better left to a state court, but instead is exactly the sort of declaratory judgment action dealt with by the federal courts every day. No issues necessary for the determination of this duty to defend action will be decided in the Virginia Beach Circuit Court Action. Efficiency concerns favor a prompt determination of the duty to defend in this Court because without a declaration as to defense duties, it is impossible for BMIC to determine settlement duties – indeed, such a declaration would benefit all parties, since the absence of coverage would doubtless affect everyone's decisions related to the litigation.

Finally, the Protos' blanket accusation of forum shopping is obviously baseless – instead, BMIC has "'chose[n] a commendable path, by paying defense costs,' while seeking declaratory relief to resolve its coverage dispute", <u>Mount Vernon Fire Ins. Co. v. Adamson</u>, No. 3:09cv817-HEH, 2010 U.S. Dist. LEXIS 106758, at *14-15 (E.D. Va. Sept. 15, 2010), <u>quoting</u> <u>Great Am. Ins. Co. v. Gross</u>, 468 F.3d 199, 212 (4th Cir. 2006).

## II.    PROCEDURAL HISTORY

On or about April 21, 2009, the Protos filed a state court action against Futura, an insured of BMIC, and certain other defendants in the Circuit Court for the City of Virginia Beach,

Virginia in connection with the alleged installation of Chinese drywall in their home.  On or about February 26, 2010, the Protos filed a First Amended Complaint in the Virginia Beach Circuit Court Action.  On July 2, 2010, Builders Mutual filed this declaratory judgment action, requesting that this Court declare that Builders Mutual has no duty to defend or indemnify Futura or any other insured with respect to the claims asserted by the Protos.  Having received an extension of time to file responsive pleadings, on October 11, 2010, the Protos filed their Motion To Stay All Proceedings, along with their Memorandum in Support of Motion to Stay All Proceedings ("Memorandum" or "Mem.").

## III.   ARGUMENT

### A.   By Denying the Motion To Stay And Allowing The Declaratory Action To Go Forward, The Court Will Fulfill The Purposes Of The Declaratory Judgment Act

"[A] federal district court should normally entertain a declaratory judgment action within its jurisdiction when it finds that the declaratory relief sought (i) 'will serve a useful purpose in clarifying and settling legal relations in issue,' and (ii) 'will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceeding.'"  Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371, 375 (4th Cir. 1994) (quoting Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 325 (4th Cir. 1937) (quoting E. Borchard, Declaratory Judgments 107-09 (1934)).  The Fourth Circuit in Nautilus stated "**we have frequently approved the use of federal declaratory judgment actions to resolve disputes over liability insurance coverage, even in advance of a judgment against the insured on the underlying claim for which coverage is sought**."  15 F.3d at 375-76 (emphasis added).  While the Court noted that "considerations of federalism, efficiency, and comity" may weigh into a district courts' decision on whether to entertain a declaratory action, the Court noted that there is no "*per se* rule

forbidding a federal court to entertain a declaratory judgment action brought to resolve issues of insurance coverage during the pendency of related litigation against the insured in state court. Such a rule would, of course, be flatly inconsistent with controlling Supreme Court precedent approving the use of declaratory judgment actions by insurers in precisely that situation." Id. at 376; see also Zurich American Ins. Co. v. Public Storage, 697 F. Supp. 2d 640, 643 (E.D. Va. 2010) ("[I]t is equally clear that this discretion [to stay or dismiss declaratory judgment actions] is by no means unfettered.  Indeed, allowing unfettered discretion would not give effect to Congress' clear intention in enacting the Declaratory Judgment Act to make the declaratory remedy available, as a general matter, in federal lawsuits.  Thus, **absent a good reason not to exercise jurisdiction, federal courts should hear declaratory judgment actions and provide declaratory relief where it is warranted by law and by the facts and circumstances of a particular case.").** (**e**mphasis added).

Here, in denying the Protos' motion to stay and allowing the declaratory judgment action to go forward, the Court will "clarify[] and settle[e] legal relations in issue" and "will terminate and afford relief from the uncertainty, insecurity and controversy." See Nautilus, 15 F.3d at 375, 377 (finding that "[t]here is no question but that the declaratory relief sought [on coverage issues during the pendency of related state court litigation against the insured] would 'serve a useful purpose in clarifying and settling the legal relations in issue,' and that it would 'terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'").

B.   **In Determining Whether To Exercise Jurisdiction Over A Declaratory Judgment Act, The Court Must Consider The Factors Set Forth In Nautilus Ins. Co. v. Winchester Homes, Inc.**

As the Protos correctly state, the Fourth Circuit found that district courts should consider the following four factors in determining whether to exercise their jurisdiction over declaratory

judgment action on coverage issues while the underlying litigation against the insured is pending in state courts:

> (1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of "overlapping issues of fact or law" might create unnecessary "entanglement" between the state and federal courts; and (4) whether the federal action is mere "procedural fencing," in the sense that the action is merely the product of forum-shopping.

See Nautilus, 15 F.3d at 377; see also Mem. at 4-5. In Nautilus, the Fourth Circuit reversed as an abuse of discretion the district court's determination not to entertain an insurer's declaratory action. 15 F.3d at 377. In doing so, the court found that **none** of the four factors justified dismissing the declaratory judgment action, and that "these additional considerations of federalism, efficiency, and comity are not sufficiently compelling to overcome **the strong federal interest in awarding declaratory relief that will serve the salutary purposes of the Declaratory Judgment Act.**" Id. at 380 (emphasis added).

**C.    The Protos Premise Their Motion To Stay On The "Unnecessary Entanglement" Factor Yet Overlook The Controlling Fourth Circuit Decisions In Coffey and Antonelli, Which Provide That In Duty to Defend Cases, As Here, The Court Is Limited To Comparing the Factual Allegations, Taken As True, To The Language Of The Insurance Policies, Such That There Are No Factual Issues That Would Create "Unnecessary Entanglement" Between The State And Federal Courts**

The Protos claim that "Builders Mutual must, by necessity, present and prove the same or substantially similar facts as are at issue in the Protos' Lawsuit pending in Virginia Beach Circuit Court" and that "this Court risks intruding on the fact-finding function of the jury in the Virginia Beach Circuit Court Proto Lawsuit," resulting in "unnecessary entanglement between federal and state legal court systems." Mem. at 5-6, 8. The Protos, however, fail to discuss Penn-America Ins. Co. v. Coffey, 368 F.3d 409, 413 (4th Cir. 2004), and do not even mention the Fourth

Circuit's recent decision in <u>Minnesota Lawyers Mutual Insurance Co. v. Antonelli, Terry, Stout & Kraus</u>, 355 Fed. Appx. 698 (4th Cir. 2009) ("<u>Antonelli</u>").  The reason for such silence on these cases is obvious – these cases both establish that under Virginia law, factual determinations are not necessary to determine whether there is coverage for the underlying claims.  Without such factual determinations, the Protos cannot show any unnecessary entanglement between the state and federal courts.

    1.    <u>The Fourth Circuit In Coffey and Antonelli Held That The Eastern District of Virginia Committed Reversible Error In Finding That Factual Determinations Were Necessary To Determine The Duty To Defend</u>

In <u>Penn-America Ins. Co. v. Coffey</u>, 368 F.3d 409, 413 (4th Cir. 2004), the Court of Appeals reversed the District Court's decision for abuse of discretion in declining to exercise jurisdiction over an insurer's suit seeking a declaratory judgment that it had no duty to defend or indemnify its insured, **based solely on the allegations of the state court complaint.**  The Court specifically addressed whether a determination on the duty to defend would result in unnecessary entanglement with the underlying state court action, and found that it would not for the following reasons:

> **. . . the duty-to-defend question in this case will not require the district court to resolve factual questions at all.**  It need only decide such coverage by comparing what Sizemore *has alleged* in the state court action with the language of the Penn-America insurance policy.  Under Virginia law, an insurer's duty to defend arises "whenever the complaint against the insured alleges facts and circumstances, some of which, if proved, would fall within the risk covered by the policy." *Brenner v. Lawyers Title Ins. Corp.*, 240 Va. 185, 397 S.E.2d 100, 102 (1990); *see also Va. Elec. & Power Co. v. Northbrook Prop. & Cas. Ins. Co.*, 252 Va. 265, 475 S.E.2d 264, 265-66 (1996).  And there is no duty to defend "if it appears clearly that the insurer would not be liable under its contract for any judgment *based upon the allegations.*" *Brenner,* 397 S.E.2d at 102 (emphasis added).

<u>Coffey</u>, 368 F.3d at 413 (bold emphasis added).

One would have thought that _Coffey_ would have ended all discussion about the impermissibility of a discretionary stay in a Virginia "eight corners" duty to defend suit for declaratory judgment.  But most recently, in Minnesota Lawyers Mutual Insurance Co. v. Antonelli, Terry, Stout & Kraus, 355 Fed. Appx. 698 (4th Cir. 2009), the Fourth Circuit had to repeat itself, in reviewing an abstention order from the Alexandria Division of the Eastern District:

> [t]his Court in _Coffey_ found that "[u]nder Virginia law, an insurer's duty to defend arises 'whenever the complaint against the insured alleges facts and circumstances, some of which, if proved, would fall within the risk covered by the policy.'" _Coffey_, 368 F.3d at 413 (quoting _Brenner v. Lawyers Title Ins. Corp._, 240 Va. 185, 397 S.E.2d 100, 102 (Va. 1990)). This principle is referred to as the "four corners rule." _See Travelers Property Cas. Ins. Co. v. Bruner_, No. 3:07CV463-HEH, 2007 U.S. Dist. LEXIS 79279, 2007 WL 3143333, at *2 (E.D. Va. Oct. 25, 2007). Based on the four corners rule, this Court found that "the duty-to-defend question . . . [does] not require the district court to resolve factual questions at all. It need only decide such coverage by comparing what [the plaintiff] _has alleged_ in the state court action with the language of the [provider's] insurance policy." _Coffey_, 368 F.3d at 413. Therefore, "there is no duty to defend 'if it appears clearly that the insurer would not be liable under its contract for any judgment _based upon the allegations.' Brenner_, 397 S.E.2d at 102 (emphasis added)." _Id._ The district court was being asked only to "decide the scope of the _contractual_ language" of the insurance policy, and it was "not necessary to resolve" factual issues "before defining the scope of the contract's" exclusion clause at issue. _Id._ at 414.

> Here, the district court faced the same question at issue in _Coffey:_ whether the allegations before the state court fell within the scope of Exclusion Three or the Specific Entity Exclusion of the Policy and whether those same allegations sought damages "resulting from the rendering or failure to render professional services." With this question, **the district court committed the same error as the district court did in _Coffey_.** It presumed that determining the duty to defend depends on the actual outcome of the state litigation. Instead, the district court, following Virginia law, should have decided whether the allegations in the state complaint were within the scope of the insurance policy. **Therefore, the district court erred when it found that determination of facts was necessary, or even possible, in order to determine MLM's duty to defend.**

> The Firm and Stout argue that "MLM is forcing the Antonelli Law Firm and Mr. Stout to prove the contrary--to prove precisely what the Florida  claimants allege --or to forfeit any possibility of MLM's coverage." (Appellees' Br. 15.) This

assertion rests on the false premise that proving the facts underlying the Florida suit is necessary. **Instead, the district court is bound by Virginia law to take the pleadings in the state suit as true and apply those against the insurance policy. Essentially, this task involves the interpretation of contractual language and nothing more. Thus, no entanglement with the facts and issues in the state proceeding would have occurred.**

<u>Antonelli</u>, 355 Fed. Appx. at 701-02 (emphasis in bold added).   The Court went on to find that the two other <u>Nautilus</u> factors relied upon by the district court – whether the state had a strong interest in having the issues decided by its courts and whether the state courts could more efficiently resolve the matter – similarly did not justify dismissal of the matter. <u>Id.</u> at 702-04.

> 2.    <u>The Protos' Argument As To Unnecessary Entanglement Is Predicated On Their Fundamentally Incorrect Assertion That BMIC Needs To Litigate Facts In Dispute In The Virginia Beach Circuit Court Action</u>

As mentioned above, the Protos' unnecessary entanglement arguments is based on their faulty premise that "Builders Mutual must, by necessity, present and prove the same or substantially similar facts as are at issue in the Protos' Lawsuit pending in Virginia Beach Circuit Court." Mem. at 5.   In jurisdictions such as Virginia, where the duty to defend is ascertained solely by looking to the pleaded facts, factual overlap with the case below does not and cannot exist. See <u>Coffey</u>, 368 F.3d at 413 (No entanglement where "the district court need not make independent findings as to what actually occurred . . . but rather need only decide whether the complaint's allegations, if proved, would bring the factual scenario within the scope of the exclusion.").   Thus, in determining whether BMIC owes a duty to defend under its policies, the District Court cannot look beyond the Protos' First Amended Complaint in the Virginia Beach Action.   See <u>CACI Intern. v. St. Paul Fire and Marine Ins. Co.</u>, 567 F. Supp. 2d 824, 831 (E.D.Va. 2008) ("When applying the Eight Corners Rule, **Virginia courts look only to the allegations in the complaint to discern whether the insurer has a duty to defend under the policy.**" *See Reisen v. Aetna Life & Cas. Co.,* 225 Va. 327, 302 S.E.2d 529, 531 (1983).

**Evidence outside of that initial pleading cannot be considered**.") (emphasis added).   Thus,

**none** of the factual issues raised by the Protos in the Memorandum, including the following, are

relevant to the determination of the duty to defend:

- Whether the compounds emitted did, in fact, cause the damage claimed by the Protos; instead, for purposes of the "eight corners" rule, those allegations are taken as true.

- Who performed what work and whether such work proximately caused the damages to the Protos' home; again, for purposes of the "eight corners" rule, any allegations to that effect in the Protos' complaint are assumed to be true, and no extrinsic facts may be considered.

- Whether such work was in fact defective.   Again, the allegations are taken as true for purposes of determining the duty to defend.

See Mem. at 6-7.   Other issues raised by the Protos, such as whether the compounds emanating

from the Chinese drywall are in fact "pollutants" as that term is used in the Policy, and whether

the damages alleged constitute "property damage" caused by an "occurrence", will be

determined by the Court solely by comparing the allegations in the Complaint to the terms of the

Policy.   In the absence of the need to resolve any factual issues, the Protos are unable to show

how this action would result in unnecessary entanglement of state and federal courts, such that a

stay is not warranted.   See, e.g., Penn-America Ins. Co. v. Mapp, 461 F. Supp.2d 442, 451-

52 (E.D.Va. 2006) (" . . . the Court may appropriately exercise jurisdiction and avoid

entanglement with the fact-finding analysis of the State Court, by relying only on Ms. Mapp's

Motion for Judgment. *Cf. Coffey*, 368 F.3d at 413."); Builders Mut. Ins. Co. v. Burton Co., Inc.,

2007 WL 2284576, at *5 (D.S.C. August 7, 2007) ("The duty of a liability insurance company to

defend a claim is determined by the allegations of the third-party's complaint.   If the underlying

complaint creates a possibility of coverage, the insurer is obligated to defend.   Resolving factual

issues is not necessary to determine whether an insurer has a duty to defend, and no factual

issues overlap."); Booher, 2007 WL 2351010, at *4 (D.S.C. Aug. 15, 2007) ("Because the duty

to defend issue is not before the state court and because Fidelity's duty to defend depends only upon the Dunns' state court complaint, determining Fidelity's duty to defend will not result in unnecessary entanglement between the state and federal court systems.").

3. In The Fourth Circuit, Determinations Of An Insurer's Duty To Defend And Indemnify Are Routinely Made In Advance Of Litigation Of The Underlying Suit

In recent decisions within this Circuit, including those applying the law of other states that have essentially the same law with respect to determinations of duties of defense and indemnification in advance of litigation of the underlying claim, the rule set forth in both Antonelli and Coffey, that neither the defense nor the indemnity duty determinations require adjudication of underlying facts, has been adhered to consistently. See, e.g.,; KBS, Inc. v. Great American Ins. Co., No. 3:04cv730, 2006 U.S. Dist. LEXIS 88520, at *41 (E.D.Va. Dec. 7, 2006) (determining that "the Court **cannot** abstain from entertaining the claims raised in KBS's complaint . . . . **This conclusion finds firm support in Fourth Circuit precedent where the court has 'frequently approved the use of federal declaratory judgment actions to resolve disputes over liability insurance coverage.'**") (emphasis added).[1]   Earlier this year, in an analogous case, the Alexandria Division of the Eastern District denied a motion to stay in a declaratory judgment action involving an insurer's duty to defend in connection with an

---

[1]      See also Evanston Ins. Co. v. Radcliff, 2006 WL 328147, at *2 (S.D. W.Va. Feb. 10, 2006) ("To determine whether Evanston has a duty to defend **or indemnify**, the court must determine **whether the allegations in the complaint** are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy.") (emphasis added); Bituminous Cas. Corp. v. R.C. Altman Builders, Inc., 2006 WL 2137233, at *5 (D.S.C. July 28, 2006) ("In an action for declaratory judgment, the obligation of a liability insurance company to defend and indemnify is determined by the allegations in the complaint."); Admiral Ins. Co. v. Ace American Ins. Co., 2009 WL 783321, * 7 (W.D.Va. Mar. 24, 2009) ("Admiral owed AHP no duty to defend, and therefore no duty to indemnify, because it was plain from the face of the Crump and Gibson complaints that their deaths arose out of and in the course of their employment . . . .") (applying Tennessee law).

underlying action in Fairfax County Circuit Court. <u>Zurich American Ins. Co. v. Public Storage</u>, 697 F. Supp. 2d 640, 646 (E.D. Va. 2010).  In considering whether the declaratory judgment action would result in unnecessary entanglement with the state court case, the Court found

> **it is not necessary to "make independent findings as to what actually occurred," but rather, it is necessary only to "decide whether the complaint's allegations, if proved, would bring the factual scenario within the scope of the exclusion[s]."** *Penn-America*, 368 F.3d at 413. Answering this question will not require determination of any ultimate issues essential to the state court litigation.  With the issue thus presented, it is pellucidly clear that the danger of entanglement with the state court proceedings is minimal, if indeed at all present.

<u>Public Storage</u>, 697 F. Supp. 2d at 646 (emphasis added).  The court thus concluded:

> The PS defendants' motion to stay this declaratory judgment action must be denied. This conclusion is compelled by consideration of the four *Nautilus* factors, of the relevant Fourth Circuit cases applying *Nautilus*, and of *Nautilus's* underlying rationale that courts must exercise restraint in declining to hear declaratory judgment suits in order to effectuate the purpose of the Declaratory Judgment Act. Because (i) the state's interest in resolving this dispute is minimal, (ii) judicial economy will not be served by staying this action pending the outcome of the state court proceeding, (iii) there is little or no risk of entanglement with the ongoing state action, and (iv) this suit was not brought for purposes of procedural fencing, this matter cannot be stayed at this time and shall proceed.

<u>Id.</u>

       4.     <u>The Only Case Cited By The Protos In Support Of Their Unnecessary Entanglement Argument Did Not Involve The Duty To Defend And Is Thus Inapplicable</u>

The Protos cite to <u>Auto-Owners Ins. Co. v. Waters</u>, No. 3:09CV134-HEH, 2009 U.S. Dist. LEXIS 96993 (E.D. Va. Oct. 20, 2009), as support for their argument that factual issues common to the federal and state court actions would result in unnecessary entanglement between the two court systems.  Mem. at 7.  Unlike this case where factual determinations are not relevant, the <u>Waters</u> case required factual determinations extrinsic to the complaint and policy. <u>See</u> No. 3:09CV134-HEH, 2009 U.S. Dist. LEXIS 96993, at *17.  For this reason, the <u>Waters</u>

Court did not apply the "four corners" (or sometimes referred to as "eight corners") rule, or even cite to <u>Coffey</u>. Rather, the court found factual discovery was required and because of that, there was a "clear potential for entanglement" with the state court action. <u>See</u> <u>id.</u> at *17-18. Because such factual issues are not relevant in this matter, the Court should follow <u>Coffey</u> and <u>Antonelli</u>, as well as the various district court decisions, that have applied the "four corners" rule and found that the duty to defend determination does not result in unnecessary entanglement.

### D. In Addition To There Being No Unnecessary Entanglement, No Other <u>Nautilus</u> Factor Supports A Stay

The Protos argue that "the three (3) remaining <u>Nautilus</u> factors also support a stay of this case." Mem. at 8. As an initial matter, after consideration of the unnecessary entanglement factor, the Fourth Circuit in <u>Coffey</u> noted that "[n]one of the remaining three *Nautilus* factors plays a particularly important role . . . in assessing whether the declaratory judgment action should be decided now." 368 F.2d at 414. Even so, an examination of these factors makes it clear that **all** of the <u>Nautilus</u> factors weigh heavily against a stay of this case.

    1.    <u>Because The Declaratory Judgment Action Involves Only Issues Of Insurance Coverage Not At Issue In The State Court Case, Virginia Does Not Have A Strong Interest In Having This Decided In State Court</u>

The Protos state that "Virginia law governs the present diversity action between a North Carolina plaintiff insurer and three (3) Virginia defendants" and "[t]herefore, the Commonwealth of Virginia and its Circuit Court in the City of Virginia Beach has a relatively strong interest in deciding the issues . . . ." Mem. at 8. This conclusory statement, however, does not show that Virginia has a strong interest in having the duty to defend decided by the state court. In <u>Coffey</u>, the Fourth Circuit found that

> while the State certainly has a strong interest in protecting its jurisprudence and an interest in deciding cases calling for application of its own law, to defer to the state court tort case in the circumstances before us will not advance the State's

interests significantly because (1) the contractual coverage issue will not be decided by the state tort case, and (2) Penn-America is not a party to the state case.

368 F.3d at 414. Here, just like in <u>Coffey,</u> the coverage issue will not be decided in the Virginia Beach Circuit Court case, and BMIC is not a party to that case.

In addition, as this case does not involve the determination of facts in dispute in the Virginia Beach Circuit Court action, <u>supra</u>, only the interpretation of the insurance policies is at issue. In <u>Great American Ins. Co. v. Gross</u>, the Fourth Circuit indicated that federal courts may use their discretion to abstain in this context "only when the questions of state law involved are difficult, complex, or unsettled." 468 F.3d 199, 211 (4th Cir. 2006) (citing <u>Nautilus</u>, 15 F.3d at 378); <u>see also</u> <u>Coffey</u>, 368 F.3d at 414 (stating that "the State's interest is 'not particularly significant' where any state law issues are standard and 'unlikely to break new ground.'") (quoting <u>United Capitol Ins. Co. v. Kapiloff</u>, 155 F.3d , 494 (4th Cir. 1998)); <u>Public Storage</u>, 697 F. Supp. 2d at 645 (stating that "the duty-to-defend question is a well settled a [sic] matter of Virginia law," such that state's interest did not warrant a stay). The legal issues involving the interpretation of an insurance policy, as here, are of the sort regularly dealt with by the United States District Courts in Virginia. Thus, "Virginia's interest in having those issued decided in its own courts, which is no stronger than it is in any case in which a federal court has jurisdiction over a claim in which state law provides the rule of decision, is not sufficiently compelling to weigh against the exercise of federal jurisdiction." <u>Gross</u>, 468 F.3d at 211.

2.     <u>Because This Case Deals Only With Issues Of Insurance Coverage, No Efficiency Concerns Exist In Support Of A Stay</u>

The Protos urge that this declaratory judgment action may be more efficiently resolved in the Virginia Beach Circuit Court action, to which BMIC is not a party, and in which no

determination of any rights or liabilities under BMIC's policies will be made.  This is the "piecemeal litigation" prong of the <u>Nautilus</u> analysis. Again, the Fourth Circuit has repeatedly found that federal declaratory judgment actions seeking a determination of the insurer's duty to defend will not result in piecemeal litigation.  As the Fourth Circuit wrote in <u>Antonelli</u>:

> While the conduct of Stout underlies both the Florida suit and the declaratory judgment action, the Florida suit is an action involving fraud, contract law, and possibly malpractice.  In the declaratory judgment action, these issues were not before the district court.  The district court was only faced with a contractual coverage issue.  **Piecemeal litigation would therefore not result from the district court deciding the coverage issue because the scope of coverage is not at issue in the state court proceeding.**

355 Fed. Appx. at 704 (emphasis added) (concluding that "the district court erred in relying on the *Nautilus* factors of state interest and efficiency to dismiss MLM's declaratory judgment action"); <u>see also</u> Public Storage, 697 F. Supp. 2d at 645 (finding that "abstention from deciding this matter would not advance any interest in judicial efficiency").

     3.    <u>As The Court In Coffey Recognized, An Insurer That Seeks To Resolve A Dispute As To Coverage By Initiating A Prompt Declaratory Judgment Action Is Not Engaging In Procedural Fencing</u>

BMIC's effort to seek a prompt determination of its duties under the policies does not constitute "procedural fencing".[2]  To the contrary,

> [a]n action filed by an insurer to obtain the prompt resolution of a dispute over the obligations to defend and indemnify its insured arising from a separate and independent tort action filed against it in state court is appropriate for early resolution in a declaratory action. *Nautilus Insurance Co.,* 15 F.3d at 380.  **The Fourth Circuit Court of Appeals approves of these cases.**  The Court is not convinced that the cases are being used as a device for procedural fencing.

---

[2]    As part of their Virginia Beach Circuit Court Action, the Protos seek a declaratory judgment against their homeowners' insurer, which declined coverage for the Protos' claim.  The Protos state no basis by which BMIC could even be made a party to the Virginia Beach Circuit Court Action, let alone explain how a coverage action they themselves initiated against their insurer suggests forum shopping.

<u>Builders Mut. Ins. Co. v. Burton Co., Inc.</u>, 2007 WL 2284576, at *6 (D.S.C. August 7, 2007) (emphasis added); <u>see also</u> <u>Public Storage</u>, 697 F. Supp. 2d at 646 (finding no procedural fencing, as the insurer "seeks resolution of a live controversy between parties over the coverage and scope of an insurance policy"); <u>Westfield Ins. Co. v. Goodall</u>, 2009 WL 113061, at *3 (S.D. W.Va. Jan. 16, 2009) ("That has not occurred here. The coverage issues are not apparently presented in the circuit court action. There is little indication that Westfield has attempted a clever parry by coming to federal court. Instead, it appears to have merely availed itself of the federal forum provided to it by Congress.").

## IV.    CONCLUSION

In conclusion, on two occasions in the past six years the Fourth Circuit has held it is appropriate to entertain declaratory judgment actions regarding an insurer's duty to defend when an underlying state court action was pending, and, in fact, was an abuse of discretion not to do so. The Fourth Circuit need not do so on a third occasion here. Therefore, for the reasons set forth above, and those that may be argued at hearing, Builders Mutual Insurance Company respectfully requests that this Honorable Court deny Defendants' Motion To Stay All Proceedings, and for such other and further relief as this Court deems just and proper.

Dated:  October 25, 2010

Respectfully submitted,

BUILDERS MUTUAL INSURANCE COMPANY

By Counsel

_____/s/_____
Danny M. Howell      VSB No. 30352
Mikhael D. Charnoff  VSB No. 43929
SANDS ANDERSON PC
1497 Chain Bridge Road, Suite 202

McLean, VA  22101
Telephone: (703) 893-3600
Facsimile: (703) 893-8484

and

Kelly B. LaPar (VSB No. 76041)
SANDS ANDERSON PC
P.O. Box 1998
1111 E. Main Street, Suite 2400 (23219)
Richmond, VA 23218-1998
Phone: (804) 648-1636
Fax: (804) 783-7291
*Counsel for Builders Mutual Insurance Company*

**CERTIFICATE OF SERVICE**

I certify that on October 25, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to:

William A. Lascara, Esquire
James T. Lang, Esquire
Alysha N. Fulkerson, Esquire
Pender & Coward, P.C.
222 Central Park Avenue, Suite 400
Virginia Beach, Virginia 23462
 (757) 490-6265
Fax: (757) 456-2935
Email: wlascara@pendercoward.com
*Counsel for Benjamin R. Proto and Holly Proto.*

_____/s/_____
Danny M. Howell