

FILED

APR 21 2011

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Norfolk, Virginia

BUILDERS MUTUAL INSURANCE
COMPANY,

      Plaintiff,

v.                             Civil Action No. 2:10cv324

THE FUTURA GROUP, L.L.C., and

BAY REFLECTIONS, L.L.C., and

BENJAMIN R. PROTO AND HOLLY
PROTO,

      Defendants.

### OPINION AND ORDER

On July 2, 2010, Plaintiff Builders Mutual Insurance Company ("Plaintiff" or "Builders Mutual") filed a Complaint in this Court, seeking a declaratory judgment that it has no duty to defend or indemnify The Futura Group, L.L.C. ("Futura") with respect to claims brought against Futura in state court by Benjamin R. Proto and Holly Proto (the "Protos"). On October 11, 2010, the Protos filed a motion to stay the action brought by Builders Mutual pending resolution of the Protos' underlying state court case. After examining the motion and the associated briefs, the Court finds that oral argument is unnecessary because the facts and legal contentions are adequately presented and oral argument would not aid in the decisional process. Fed.

R. Civ. P. 78(b); E.D. Va. Loc. R. 7(J).   Therefore, the matter is now ripe for decision and, for the reasons set forth below, the Court **DENIES** the Protos' motion to stay.

## I. Facts and Procedural History

On April 21, 2009, the Protos filed a complaint ("Original Complaint") in the Circuit Court for the City of Virginia Beach, Virginia, styled <u>Benjamin R. Proto and Holly Proto v. The Futura Group, L.L.C., et al</u>, Case No. CL09-2455.   The Defendants in that state court action are Futura, Venture Supply, Inc., Scott Taylor Plastering, Inc., and Metropolitan Property and Casualty Insurance Company.   <u>See</u> Compl. ¶ 8; Ex. A.   The Original Complaint alleged a number of counts stemming from the construction of the Protos' residence in Virginia Beach, Virginia.   Compl. ¶ 8; Ex. A ¶ 2.   On or about February 6, 2010, the Protos filed a First Amended Complaint ("Protos' Complaint") in the state action, which merely replaces certain paragraphs alleged in the Original Complaint, the remainder of which is incorporated by reference in the amended pleading.   Compl. ¶ 9. The Protos' Complaint asserts causes of action against Futura for breach of contract, breach of certain warranties, negligence, unjust enrichment, private nuisance, equitable and injunctive relief, medical monitoring, and violation of the Virginia Consumer Protection Act.   Compl. ¶ 8; Ex. A.

2

These allegations are based on the premise that the "Chinese drywall used in the Protos' home is 'inherently defective because it emits various sulfide gases and/or chemicals through 'off-gassing' that create noxious, 'rotten-egg-like' odors, and causes damage and corrosion...to the structural, mechanical, and plumbing systems of the Proto's home..., as well as personal and other property....'" Compl. ¶ 10. The Protos' Complaint also alleges "that '[t]he compounds emitted by the drywall at issue are also capable of, among other things, harming the health of individuals subjected to prolonged exposure.'" Compl. ¶ 11.

Builders Mutual is not a party to the state action brought by the Protos. However, it did issue insurance policies to Futura that relate to the Protos' home. As a result, Builders Mutual has been "providing Futura with a defense in the Protos' lawsuit, subject to a reservation of rights." Compl. ¶ 14.

On July 2, 2010, Builders Mutual filed a Complaint in this Court, seeking a declaratory judgment, pursuant to the federal Declaratory Judgment Act, 28 U.S.C. § 2201, finding that under the relevant insurance policies it has no duty to defend or indemnify Futura with respect to the claims alleged in the Protos' Complaint. Compl. ¶ 27. Specifically, Builders Mutual alleges that it has no duty to defend or indemnify Futura in the underlying state court action because the injuries of which the

Protos complain are either not within the general terms of coverage in the insurance policies, or they are expressly excluded from coverage by either the "Total Pollution Exclusion" or the "Your Work" exclusion.  Compl. ¶¶ 22-27.  In response to this request for a declaratory judgment, on October 11, 2010, the Protos filed a motion to stay all proceedings pending the resolution of the underlying state action.  It is this motion to stay that the Court addresses below.

## II. Standard of Review

The Protos assert, and Builders Mutual does not dispute, that Virginia law applies to the resolution of this motion.  See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Buchanan v. Doe, 246 Va. 67, 70-71 (1993).  "Under Virginia law, an insurer's duty to defend arises 'whenever the complaint against the insured alleges facts and circumstances, some of which, if proved, would fall within the risk covered by the policy.'"  Penn-America Ins. Co. v. Coffey, 368 F.3d 409, 413 (4th Cir. 2004) (quoting Brenner v. Lawyers Title Ins. Corp., 240 Va. 185 (1990)).  Duty to defend questions do "not require the district court to resolve factual questions at all. It need only decide such coverage by comparing what [the state court Plaintiff] *has alleged* in the state court action with the language of the [provider's] insurance policy."  Id.  "[T]here is no duty to defend 'if it appears clearly that the insurer

would not be liable under its contract for any judgment *based upon the allegations.*'" Id. (quoting Brenner, 240 Va. at 189). Since courts must only compare the allegations contained within the four corners of the complaint to the terms contained within the four corners of the insurance contract, this standard of review for duties to defend is often referred to as the "Eight Corners Rule." See CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co., 566 F.3d 150, 155 (4th Cir. 2009); Capitol Envtl. Servs., Inc. v. N. River Ins. Co., 536 F. Supp. 2d 633, 640 n. 14 (E.D. Va. 2008) [hereinafter Capitol I] (explaining that the Eight Corners Rule is a combination of the Exclusive Pleading Rule and the Potentiality Rule).

The duty to indemnify, on the other hand, is different than the duty to defend. It is a narrower obligation. Minn. Lawyers Mut. Ins. Co. v. Antonelli, Terry, Stout & Kraus, LLP, 355 F. App'x 698, 704 (4th Cir. 2009) ("Antonelli") (unpublished). "While the duty to defend is based on the allegations in the underlying complaint, the duty to indemnify relies on litigated facts." CACI Int'l, Inc., 566 F.3d at 155. "'An insurer's duty to defend is triggered if there is any possibility that a judgment against the insured will be covered under the insurance policy[,]'" id. (quoting Bohreer v. Erie Ins. Grp., 475 F. Supp. 2d 578, 584 (E.D. Va. 2007)), whereas "[t]he duty to indemnify...refers to an insurer's responsibility to pay a

monetary award when its insured has become liable for a covered claim." Perdue Farms, Inc. v. Travelers Cas. & Sur. Co. of Am., 448 F.3d 252, 257-58 (4th Cir. 2006).   With these general principles of insurance law in mind, the Court must now turn to the applicable standard for determining whether to stay such a declaratory judgment proceeding.

"Under the Declaratory Judgment Act, a district court, in a case or controversy otherwise within its jurisdiction, 'may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'" Penn-America Ins. Co., 368 F.3d at 412 (quoting 28 U.S.C. § 2201(a)).   Of significance, the decision regarding whether to hear a federal declaratory judgment action is discretionary.   Id.   According to the United States Court of Appeals for the Fourth Circuit, "'a declaratory judgment action is appropriate 'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and...when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.''" Id. (quoting Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 256 (4th Cir. 1996)).   However, when a related state court proceeding is pending, "'considerations of federalism, efficiency, and comity' should inform the district court's decision whether to exercise jurisdiction over a declaratory

6

judgment action." Id. (quoting Centennial Life Ins. Co., 88 F.3d at 257).

The Fourth Circuit has focused on four factors to guide its analysis when determining "whether to proceed with a federal declaratory judgment action when a parallel state action is pending." Id.; see also United Capitol Ins. Co. v. Kapiloff, 155 F.3d 488, 493 (4th Cir. 1998) ("To aid district courts in balancing the state and federal interests when a parallel state action is pending, we have articulated four factors for consideration...."). These factors, referred to as the Nautilus factors,[1] apply to both motions to dismiss declaratory judgment actions and motions to stay the proceedings. See Riley v. Dozier Internet Law, PC, 371 F. App'x. 399, 402 (4th Cir. 2010) (unpublished); Auto-Owners Ins. Co. v. Waters, Case No. 3:09cv134, 2009 U.S. Dist. LEXIS 96993, at *2-3, 11 (E.D. Va. Oct. 20, 2009). Accordingly, when evaluating a motion to stay, district courts must consider:

> (1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of "overlapping issues of fact or law" might create unnecessary "entanglement" between the state and federal courts; and (4) whether the federal action is

---

[1] They are referred to as the Nautilus factors because they originated in the case of Nautilus Insurance Co. v. Winchester Homes, 15 F.3d 371 (4th Cir. 1994).

mere "procedural fencing," in the sense that the action is merely the product of forum-shopping.

Penn-America Ins. Co., 368 F.3d at 412 (quoting Kapiloff, 155 F.3d at 493-94). These factors are each analyzed below.

### III. Discussion

### A. State's Interest

The first of the four Nautilus factors the Court must consider is "whether the state has a strong interest in having the issues decided in its courts." Id. In Penn-America Insurance Co., an action for a declaratory judgment on the issue of an insurance company's duty to defend and indemnify, the Fourth Circuit analyzed the first factor as follows:

> [W]hile the State certainly has a strong interest in protecting its jurisprudence and an interest in deciding cases calling for application of its own law, to defer to the state court tort case in the circumstances before us will not advance the State's interests significantly because (1) the contractual coverage issue will not be decided by the state tort case, and (2) Penn-America is not a party to the state case.

Id. at 414. This Court agrees that the Commonwealth of Virginia has a strong interest in protecting its jurisprudence and applying its own law. However, this Court must decide whether deferring to the state court case in these circumstances will advance the state court's interests significantly. In making that decision, the court's statement in Penn-America Insurance Co. provides a sound framework for analysis.

8

### 1. Contractual coverage

When asking whether the contractual coverage issue in this Court's declaratory judgment action will be decided in the state court case, this Court must look at both factual and legal issues which determine coverage and are common to both cases.

#### a. factual determinations

##### i.    duty to defend

The duty to defend analysis conducted by this Court involves a comparison of the state court complaint with the Builders Mutual policy language to determine whether the complaint's allegations fall within the coverage described by the policy. As explained above, this is known as the "Eight Corners Rule." Such comparison does not, at least in the traditional sense, require independent fact finding, and the Protos have offered no authority for the proposition that this Court can look to extrinsic facts to supplement its duty to defend analysis under the Eight Corners Rule. See Capitol I, 536 F. Supp. 2d at 642. Therefore, no fact finding common to both cases will take place in the duty to defend analysis. As a result, with respect to factual determinations on the duty to defend question, "the contractual coverage issue will not be decided by the state tort case." Id.

ii. duty to indemnify

The duty to indemnify analysis conducted by this Court relies on litigated facts. As the Fourth Circuit noted in <u>Penn-America Insurance Co.</u>, 368 F.3d at 413, "an insurer's duty to *indemnify* will depend on resolution of facts alleged in the complaint" against the insured. Because the duty to defend is broader than the duty to indemnify, if there is no duty to defend, there can be no duty to indemnify. <u>Id.</u> On the other hand, even if there is a duty to defend, there may be no duty to indemnify because such a duty is narrower. In order to make this determination, where there is an underlying state suit, the court considering the duty to indemnify question must generally analyze the ultimate findings of fact in the underlying state suit once it is concluded, rather than making its own evidentiary findings in the first instance. <u>Pa. Nat'l Mut. Cas. Ins. Co. v. Block Roofing Corp.</u>, No. 2:09cv312, 2010 U.S. Dist. LEXIS 132109, at *19 (E.D. Va. Dec. 14, 2010) (applying Virginia law and concluding that a duty to indemnify decision is only made "after the state court has made its decision"); <u>Capitol I</u>, 536 F. Supp. 2d at 645 (applying Virginia law and explaining that a duty to indemnify determination is made based on facts actually discovered or proven at an underlying trial); <u>see also Perdue Farms, Inc. v. Nat'l Union Fire Ins. Co.</u>, No. 04-1176, 2005 U.S. App. LEXIS 10136, *16-23 (4th Cir. 2005) (applying

Florida law and looking to jury verdict and trial transcript in determining litigated facts to apply to policy language). After analyzing those state court findings, the court considering the duty to indemnify question must apply the applicable jurisdiction's duty to indemnify law and reach a conclusion on whether an obligation to indemnify exists.

Therefore, although the state trial court will oversee the determination of the factual issues affecting and underlying the duty to indemnify determination, it does not make the duty to indemnify determination in the first instance. In fact, even if a state court plaintiff wanted to name a defendant's liability insurer as an additional defendant in an effort to have the duty to indemnify decision made in the same case, such state court plaintiff would be precluded from doing so because, in Virginia, an injured person must reduce his claim to judgment before bringing an action against the tort-feasor's liability insurer. USAA v. Nationwide Mut. Ins. Co., 218 Va. 861, 867 (1978). "Moreover, [Virginia] Code § 8.01-5 (formerly § 8-96), prohibits the joinder of an insurance company on account of the issuance of an insurance policy to or for the benefit of any party to any cause." Id. Bell v. State Farm Auto Ins. Co., 19 Va. Cir. 226, 226-27 (City of Virginia Beach 1990); Commercial Union Ins. Co. v. Mason, 6 Va. Cir. 161, 161-62 (Campbell County 1984).

11

Accordingly, while the ultimate findings of fact necessary for determination of the duty to indemnify issue will be determined in the state court suit, application of the factual findings to the policy language and the ensuing coverage determination will not take place during the state court suit. Furthermore, this Court recognizes that if there is a duty to defend, and therefore the need for a subsequent determination of the narrower question of whether there is a duty to indemnify, it will likely be necessary for this Court to await the outcome of the state court suit before making the duty to indemnify determination. If the state court suit is not concluded by the time this Court addresses the duty to indemnify question, the Court will consider dismissing the indemnification claim without prejudice, Capitol Envtl. Servs., Inc. v. N. River Ins. Co., No. 1:10cv792, 2011 U.S. Dist. LEXIS 27454, at *10-11 (E.D. Va. Mar. 15, 2011) [hereinafter Capitol II], or administratively closing the indemnification portion of the case pending resolution of the underlying state action. Pa. Nat'l Mut. Cas. Ins. Co., 2010 U.S. Dist. LEXIS at *25.

### b. legal determinations

#### i. duty to defend

As discussed above, the Eight Corners Rule requires comparison of the allegations in the state court complaint with the insurance policy at issue in order to determine whether

12

there is a duty to defend. This determination of law will not be made in the state court action because the coverage question is not before the state court in such a scenario. Moreover, as reviewed above, the determination of the duty to defend is broader than the duty to indemnify and is therefore ideally made at an early juncture in the state court litigation process. As a result, the legal analysis necessary for the duty to defend determination will not take place in the course of the underlying state court suit.

### ii. duty to indemnify

As explained above in the factual determinations discussion, when there is an underlying state court suit, the legal analysis necessary for determination of the duty to indemnify must ordinarily await the ultimate factual findings in the state court suit. Moreover, Virginia law requires a determination of the facts and reduction of a claim to judgment before the party alleging injury brings an action against an insurer. USAA, 218 Va. at 867; § 8.01-5(B). Therefore, the legal analysis necessary for the duty to indemnify determination cannot take place until after the ultimate factual findings are made in the state court suit.

### iii. additional legal considerations

The Protos also argue that "Virginia law governs the present diversity action...[t]herefore, the Commonwealth of

13

Virginia...has a relatively strong interest in deciding the issues." Defs.' Br. 8. However, the court in Penn-America Insurance Co. plainly held that deferring to a state court based merely on the fact that the state's law will apply in a federal action does not always "advance the State's interests significantly." Penn-America Ins. Co., 368 F.3d at 414. See Nautilus Ins. Co. v. Winchester Homes, 15 F.3d 371, 378 (4th Cir. 1994) ("As the district court noted, all of the issues of insurance coverage raised here are governed by the substantive law of the State of Maryland. But that alone provides no reason for declining to exercise federal jurisdiction.").

Moreover, even if a particular state's law applies, the Fourth Circuit has observed that "the State's interest is 'not particularly significant' where any state law issues are standard and 'unlikely to break new ground.'" Penn-America Ins. Co., 368 F.3d at 414 (quoting Kapiloff, 155 F.3d at 494). However, the state's interest in deciding an issue is often compelling when "'questions of state law...rise to the level of 'difficult, complex, or unsettled.''" Nationwide Mut. Ins. Co. v. 1400 Hampton Blvd., LLC, Case Nos. 2:10cv310 & 2:10cv343, 2010 U.S. Dist. LEXIS 137492, at *7 (E.D. Va. Dec. 2, 2010) (quoting Am. Nat. Prop. & Cas. Co v. Weese, 863 F. Supp. 297, 300 (S.D. W. Va. 2004)). Here, the legal issue presented in a declaratory judgment action involving a duty to defend is

14

reviewed under the Eight Corners Rule. In the abstract, "[t]here is nothing about the Eight Corners Doctrine which would be characterized as difficult, complex or unsettled in the sense required to weigh in favor of abstaining in favor of state court adjudication." Id. at *8. The manner of deciding "the duty-to-defend question is a well settled...matter of Virginia law." Zurich Am. Ins. Co. v. Public Storage, 697 F. Supp. 2d 640, 645 (E.D. Va. 2010).

While the manner of applying the Eight Corners Rule may be well settled, the Protos argue that "the underlying state action involves two groundbreaking state law issues: the application of the 'Pollution Exclusion' to the confines of a dwelling and the effect of an 'Ensuing Loss' clause...." Defs.' Rebuttal Br. 3. The Protos go on to explain that "[a] Virginia court has only once addressed a 'Pollution Exclusion' and such case was a traditional environmental case involving the pollution of a river." Id. As a result, the Protos contend that Virginia has a strong interest in addressing this novel claim.

Although the method of applying the Eight Corners Rule under Virginia law is well defined, this Court cannot deny that the application of the pollution exclusion in the applicable policy raises issues of significant state interest. In fact, this Court has certified a question to the Supreme Court of Virginia involving the meaning and application of a similar

15

pollution exclusion, and, if accepted, the response will likely provide significant guidance in this case. Order of Certification, Nationwide Mut. Ins. Co. v. Overlook, L.L.C., No. 4:10cv69 (E.D. Va. 2011) (Docket No. 121). However, the fact that this Court has recognized the significance of this issue and certified such a question does not require a stay of these proceedings. Of course, if the Supreme Court of Virginia accepts the certified question, this Court will await its decision before resolving this case. However, if the Supreme Court does not accept the certified question, this Court will proceed with this matter because the contractual coverage issues raised in this case ("pollution exclusion" and "ensuing loss") will not be decided by the state court in the underlying Virginia Beach Circuit Court case.

For all these reasons, the contractual coverage factor (i.e., whether contractual coverage will be decided by the state court case) militates against the requested stay. Even if this Court were to stay these declaratory judgment action proceedings pending the outcome of the Virginia Beach Circuit Court case, such outcome will not resolve the duty to defend issue presented here, since such determination is based on the Eight Corners Rule. Furthermore, with respect to the duty to indemnify issue, if the parties were not before this Court, the Protos would have to reduce their claim to judgment and, if the insurer refused to

16

pay such judgment, presumably file a separate action against the defendants' liability carriers to collect. With all of those contingencies, this Court cannot say at this stage that the duty to indemnify issue will be decided by the state court.

### 2. Parties in state case

The second reason relied upon by the Penn-America court in deciding that there was no significant state court interest was whether the insurer was a party to the underlying state court case. Penn-America Ins. Co., 368 F.3d at 414. Builders Mutual is not a party in the Virginia Beach Circuit Court case. Furthermore, Virginia Supreme Court precedent and the Virginia Code prohibit such an insurer from being added as a party against their will in such a case. USAA, 218 Va. at 867; § 8.01-5(B). Therefore, this component of the state interest factor also militates against the requested stay.

### B. Efficiency

In Penn-America Insurance Co., the Fourth Circuit stated that the district court must also consider the second Nautilus factor, "whether the state courts could resolve the issues more efficiently than the federal courts." Penn-America Ins. Co., 368 F.3d at 412 (quoting Kapiloff, 155 F.3d at 493-94). The Protos argue that "because Futura and the Protos have been litigating their case [in the Virginia Beach Circuit Court] for a year and a half, have conducted substantial motions practice

17

and obtained several rulings of the Court..." "the underlying State Court action may be more efficiently resolved in Virginia Beach Circuit Court." Defs.' Br. 8. They further contend that if Futura is not found liable in the underlying state court lawsuit, "there will be no need to obtain a declaratory judgment from this or any other court on the issue of Builders Mutual's obligation of indemnity." Id. In contrast, Plaintiff argues that "the Fourth Circuit has repeatedly found that federal declaratory judgment actions seeking a determination of the insurer's duty to defend will not result in piecemeal litigation," Pl's. Br. 15, and thus efficiency concerns are minimal.

Despite the Protos' arguments regarding the significant amount of time that has already elapsed since the filing of the state court action and the effort that has already been expended in that action, courts in the Fourth Circuit have frequently looked at the commonality of the issues to be decided in both actions and the entities that are parties to each action in determining whether it would be more efficient for a federal court to abstain from hearing a declaratory judgment action. This is because, according to the Fourth Circuit, "[i]n evaluating these efficiency concerns, the Supreme Court has directed us to focus primarily on 'whether the questions in controversy between the parties to the federal suit...can better

18

be settled in the proceedings' that are already 'pending in the state courts.'"  Nautilus Ins. Co., 15 F.3d at 378 (quoting Brillhart v. Excess Ins. Co., 316 U.S. 491, 495 (1942)).

For example, in Antonelli, 355 F. App'x at 703, the Fourth Circuit held that efficiency concerns are not present when the federal court is being asked to decide different issues than those facing the state court in the underlying action.  In such a situation, there is no risk of piecemeal litigation hindering the efficiency of the judicial process since piecemeal litigation would "not result from the district court deciding the coverage issue because the scope of coverage is not at issue in the state proceeding."  Antonelli, 355 F. App'x at 704.  The court elaborated,

> [i]n the case before this Court today, such efficiency concerns are not present. While the conduct of Stout underlies both the Florida suit and the declaratory judgment action, the Florida suit is an action involving fraud, contract law, and possibly malpractice. In the declaratory judgment action, these issues were not before the district court. The district court was only faced with a contractual coverage issue.

Id. at 703-04.

In a similar vein, in Penn-America Insurance Co., the Fourth Circuit stated, "[b]ecause Penn-America is not a party in the state action and it is not clear under Virginia rules that Penn-America could intervene to have coverage issues decided within the scope of the underlying tort case, dismissing the

19

federal coverage case would not seem to advance any cause of efficiency." Penn-America Ins. Co., 368 F.3d at 414. See Auto Owners Ins. Co. v. Pers. Touch Med Spa, LLC, Case No. 4:10-cv-683, 2011 U.S. Dist. LEXIS 4213, at *12 (D.S.C. Jan. 14, 2011) (finding that in the context of that case, when the party bringing the declaratory judgment action is not a party to the underlying state court proceeding, and thus the duties to defend and indemnify will not be litigated in the state court, it would not be more efficient to have the issue brought in state court); Zurich Am. Ins. Co., 697 F. Supp. 2d at 645 ("Zurich American is not a party to the state court action and the coverage matters are not in issue there. Thus, a state court would only decide the matter in some as-yet-unfiled action or if Zurich American chose to intervene....Thus...abstention from deciding this matter would not advance any interest in judicial efficiency.").

In the present case, Builders Mutual is not a party to the underlying state action and, as such, provisions of Builders Mutual's insurance policies dealing with coverage are not at issue in that litigation. As in the cases cited above, this weighs heavily in favor of the conclusion that staying the action will not significantly promote judicial efficiency since the questions in controversy between the parties in the federal suit cannot easily be settled in the matter currently pending before the state court. Nautilus, 15 F.3d at 378-79.

Furthermore, as noted above, this Court is only going to decide the duty to defend issue in the first instance, and such determination does not involve fact finding.  Of course, if there is no duty to defend, then there can be no duty to indemnify, and deciding that issue as early as possible promotes efficiency.  If there is a duty to defend, then this Court will await the outcome of the state court case before considering the duty to indemnify issue, again promoting efficiency by not duplicating the fact finding conducted in the state court.  If after that fact finding there is no judgment against Futura in state court, presumably there is no duty to indemnify issue remaining.  However, if there is a judgment in state court, this Court will utilize the findings and evidence from the state court case to make its determinations on the duty to indemnify, also thereby promoting efficiency.  Capitol II, 2011 U.S. Dist. LEXIS at *10-11 (recognizing that federal court declaratory judgment suit should await outcome of underlying state court suit, with parties requesting further rulings in declaratory judgment suit only if state court decision fails to resolve matter).

Of note, the Protos also point out in an attachment to their rebuttal brief that a different insurer, which is a party in the underlying state action, has filed a motion for summary judgment in that case raising the issue of a Pollution Exclusion

21

in its applicable insurance contracts.   Defs.' Rebuttal Br. Ex.
1.   While issues in that motion for summary judgment may be
similar to the issue of Builders Mutual's obligations raised in
this declaratory judgment action, that fact alone does not
necessarily mean that there are significant efficiency gains to
be made in staying this declaratory judgment action.   As
mentioned previously, Builders Mutual is not a party to the
underlying state action and any decision the state court renders
in regards to the other insurer's motion for summary judgment
will not be dispositive on the issue of Builders Mutual's
obligations under its insurance policies.   Moreover, this Court
is not conversant with the intricacies of the state court
action, but it may be the case that even if the insurer
initially opposed involvement in the state court suit, it now
desires to have its coverage dispute decided in that case.   See
Matthews v. Allstate Ins. Co., 194 F. Supp. 459, 465 (E.D. Va.
1961) (suggesting insurer not foreclosed from being party to
suit at its own request).

Whatever the status of the state court suit vis-à-vis the
different insurer that is defending its interests there,
Builders Mutual clearly has no such interest in being involved
in that suit.   Therefore, its duty to indemnify would only be
decided in the state court if there was a state court judgment
against Futura and a subsequent state court judgment was sought

against Builders Mutual to collect on such underlying judgment. As a result, at this stage of the proceedings, the second factor, efficiency, does not counsel in favor of granting the Protos' motion to stay.

### C. Entanglement

The third Nautilus factor requires the Court to examine "whether the presence of 'overlapping issues of fact or law' might create unnecessary 'entanglement' between the state and federal courts." Penn-America Ins. Co., 368 F.3d at 412 (quoting Kapiloff, 155 F.3d at 493-94). "The importance of this factor rests in the fact that 'if the federal court reached final judgment before the state court, its resolution of those common issues might be entitled to preclusive effect in the state action.'" Waters, 2009 U.S. Dist. LEXIS at *16 (quoting Nautilus Ins. Co., 15 F.3d at 377). "In doing so, this 'would 'frustrate the orderly progress' of [the] state court proceedings by leaving the state court with some parts of [the] case foreclosed from further examination but still other parts in need of full scale resolution.'" Id. (quoting Nautilus Ins. Co., 15 F.3d at 377).

On this issue, the Protos argue that in requesting a declaratory judgment, "Builders Mutual must, by necessity, present and prove the same or substantially similar facts as are at issue in the Protos' Lawsuit pending in the Virginia Beach

23

Circuit Court." Defs.' Br. 5. They argue that the Virginia
Beach Circuit Court will have to determine, in connection with
the aforementioned motion for summary judgment brought by the
other insurer in the state court action, whether the drywall
emits pollutants. Id. at 6. Further, according to the Protos,
in both actions, the courts will have to determine "who
performed what work and whether it proximately caused the
damages which the Protos seek." Id. Moreover, they assert that
Builders Mutual will have to prove "facts relating to defective
workmanship, who performed it, and whether it caused the damage
which is the subject of the Protos' claims." Id. at 7. Lastly,
the Protos argue that "Builders Mutual must offer and prove what
'bodily injury' or what 'property damage' did occur and when it
occurred." Id.

While the Protos argue that trying a declaratory judgment
suit would necessarily force this Court to "make findings
regarding the same or substantially similar facts as are at
issue in the underlying state action," Defs.' Rebuttal Br. 3,
courts in the Fourth Circuit have generally rejected that
proposition in the context of duty to defend cases, as reviewed
at length above. In Penn-America Insurance Co., the Fourth
Circuit recognized that determining whether an insurance
provider has a duty to defend does "not require the district
court to resolve factual questions at all." Penn-America Ins.

Co., 368 F.3d. at 413. That is because, under the Eight Corners Rule, the Court must assume the facts in the underlying complaint are true, and merely compare those facts to the relevant insurance provisions to determine if the insured would be covered under the insurance policies. In Antonelli, the Fourth Circuit repeated this statement, rather forcefully, when it stated:

> [t]herefore, the district court erred when it found that determination of facts was necessary, or even possible, in order to determine [the provider's] duty to defend.... [T]he district court is bound by Virginia law to take the pleadings in the state suit as true and apply those against the insurance policy. Essentially, this task involved the interpretation of contractual language and nothing more. Thus, no entanglement with the facts and issues in the state proceeding would have occurred.

Antonelli, 355 F. App'x at 702. Penn-America Ins. Co. v. Mapp, 461 F. Supp. 2d 442, 451 (E.D. Va. 2006) ("This Court thus need not dismiss this matter in favor of the State Court; it may decide this declaratory judgment matter by assuming the factual allegations in Ms. Mapp's Motion for Judgment...to be true and applying these facts in interpreting the Policy.").

Since, in the duty to defend context, "it is not necessary to 'make independent findings as to what actually occurred,' but rather, it is necessary only to 'decide whether the complaint's allegations, if proved, would bring the factual scenario within the scope of the exclusion[s],'" Zurich Am. Ins. Co., 697 F.

Supp. 2d at 646, the risk of entanglement of issues determined by the state and federal court is minimal. Although it is true that, unlike a duty to defend, an "insurer's duty *to indemnify* will depend on resolution of facts alleged in the complaint, no such factfinding is necessary if there is no duty to *defend* because the allegations, even when taken as proved, would fall outside the policy's coverage." Penn-America Ins. Co., 368 F.3d at 413. Therefore, since the court "may be able to resolve the duty to indemnify after deciding the duty to defend," Antonelli, 355 F. App'x at 704, and without reaching ultimate factual determinations, there is insufficient entanglement to warrant a stay of the declaratory judgment proceedings. Furthermore, even if this Court found that there was a duty to defend, it would have to await the state court findings before resolving the duty to indemnify issue. Accordingly, there would be no risk of the federal court reaching final judgment before the state court since the federal court must await the state court's ultimate findings to make its own decision. But see Waters, 2009 U.S. Dist. LEXIS at *17-18 (pointing out that in the event the federal court makes a duty to indemnify determination prior to a state court judgment, there might be overlapping of factual determinations).

26

## D. Procedural Fencing

In considering the fourth Nautilus factor, a district court must also assess "whether the federal action is mere 'procedural fencing,' in the sense that the action is merely the product of forum-shopping." Penn-America Ins. Co., 368 F.3d at 412 (quoting Kapiloff, 368 F.3d at 493-94). In addressing this consideration, the Protos argue that Builders Mutual has brought this action in federal court because it does not want to litigate the issue in state court. Supporting this allegation, the Protos note that the Virginia Beach Circuit Court recently overruled a demurrer in the state action where the losing party advanced similar arguments to the ones that the Protos anticipate Builders Mutual will raise in the present case. Defs.' Br. 9. The Protos assert that "Builders Mutual most likely views the U.S. District Court for the Eastern District of Virginia as a more favorable forum for its contentions." Id.

The Fourth Circuit addressed this issue of procedural fencing in Nautilus, a case also involving a declaratory judgment action regarding a duty to defend and indemnify. There, the Fourth Circuit determined that the filing of the declaratory judgment action was not a device for procedural fencing. Nautilus Ins. Co., 15 F.3d at 380. In making this determination, the court noted:

27

> This is not a case in which a party has raced to
> federal court in an effort to get certain issues that
> are already pending before the state courts resolved
> first in a more favorable forum, for the issues
> presented in this declaratory action are not the same
> as those raised in the pending state court
> proceedings.

Id. Rather, the declaratory judgment action in Nautilus dealt
with "a dispute that was separate and independent from the
ongoing litigation in the state courts." Id.

The reasoning in Nautilus also applies to the facts in the
present case. Here, the issues surrounding Builders Mutual's
duty to defend under its insurance contracts are not pending
before the state court, and therefore, there is no indication
that Builders Mutual has merely raced to the federal forum in
order to obtain a preclusive judgment to use as a sword in the
state court. Moreover, this declaratory judgment action deals
with a dispute that is separate and independent from the ongoing
state litigation. While the state litigation deals with
underlying liability for a Builders Mutual insured, this
declaratory judgment action only deals with Builders Mutual's
obligations to defend and indemnify its insured with respect to
the allegations in the underlying suit. As an additional
indicia of the separate nature of these two actions, it must be
remembered that Builders Mutual is not a party to the state
court proceeding. Accordingly, since there are no indications
that this matter is being brought in an attempt to improperly

forum shop, the fourth <u>Nautilus</u> factor also does not favor a stay.[2]

### IV. Conclusion

In a case analogous to the present one, a court in this district aptly noted that "the Fourth Circuit has held, in circumstances similar to those presented here, that district courts should not stay or dismiss suits seeking declarations that insurers had no duty to indemnify or defend their insured in pending state court proceeding." <u>Zurich Am. Ins. Co.</u>, 697 F. Supp. 2d at 643. The same statement can be made here. Since the four <u>Nautilus</u> factors outlined above counsel against granting the Protos' motion to stay, the Court **DENIES** the motion to stay these proceedings. However, if the Supreme Court of Virginia accepts the certified question in <u>Nationwide Mutual Insurance Co. v. Overlook, L.L.C.</u>, the Court will then consider whether to await such result before taking any dispositive action in this case.

The Clerk is **DIRECTED** to send a copy of this Opinion and Order to all counsel of record.

---

[2] Builders Mutual might have been able to file this declaratory judgment action in state court, but they chose to file it in federal court. This, of course, is something they are authorized to do by statute. <u>See</u> <u>Nautilus Ins. Co.</u>, 15 F.3d at 380 ("Though the parties might have filed this declaratory action in state court, they chose to proceed in federal court instead, as they were authorized to do by 28 U.S.C. §§ 1332 and 2201.").

**IT IS SO ORDERED.**

_____/s/ Mark S. Davis
Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
April 21 , 2011